UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY,<br>    378 Main Street,<br>    Tucson, AZ 85701<br><br>        *Plaintiff,*<br><br>                v.<br><br>RYAN ZINKE, in his official capacity as<br>Secretary of the U.S. Department of Interior,<br>    1849 C Street NW<br>    Washington, DC 20240,<br><br>U.S. DEPARTMENT OF THE INTERIOR,<br>    1849 C Street NW<br>    Washington, DC 20240,<br><br>JIM KURTH, in his official capacity as<br>Deputy Director for Operations and Acting<br>Director of U.S. Fish and Wildlife Service,<br>    1849 C Street NW,<br>    Washington, DC 20240,<br><br>        and<br><br>U.S. FISH AND WILDLIFE SERVICE,<br>    1849 C Street NW,<br>    Washington, DC 20240,<br><br>        *Defendants.* | Case No.: 1:18-cv-1375<br><br>**COMPLAINT FOR DECLARATORY<br>AND INJUNCTIVE RELIEF** |

## INTRODUCTION

1.      In this civil action for declaratory and injunctive relief, the Center for Biological

Diversity (Center) challenges the U.S. Fish and Wildlife Service's (Service) failure to comply

with the nondiscretionary deadlines set forth in the Endangered Species Act, 16 U.S.C. §§ 1531–

1544. Specifically, the Service failed to designate "critical habitat" for the spring pygmy sunfish (*Elassoma alabamae*) concurrently with its decision to list the fish as threatened, and within one year of proposing such designated habitat, as required by Section 4 of the Act. *Id.* § 1533(a)(3), (b)(6)(A)(ii), (b)(6)(C). This failure delays lifesaving protection for a rare fish that clings to survival in one of the last places that has not been destroyed and degraded by development. The spring pygmy sunfish's very existence remains at risk until the Service fulfills its statutory duty to protect the critical habitat necessary to support its survival and recovery.

2.      True to its name, the spring pygmy sunfish is a tiny, striped fish that rarely grows longer than an inch. It lives exclusively in dense, underwater plants surrounding springs, spring runs, and spring-fed wetlands in a single spring complex in northwest Alabama.

3.      The spring pygmy sunfish's existence has always been precarious. Since its discovery in 1937, it was twice presumed extinct. Habitat degradation caused by development has extirpated the sunfish from two of the three natural spring systems it once inhabited, leaving the last known native populations around one spring system, Beaverdam Spring and Creek. Efforts to reintroduce the fish to the degraded springs it once inhabited have failed.

4.      Due to the sunfish's staggering decline and the threat of encroaching development from the City of Huntsville into the Beaverdam Spring watershed, on November 24, 2009, the Center submitted a petition asking the Service to list the spring pygmy sunfish as endangered.

5.      On October 2, 2012, the Service proposed listing the spring pygmy sunfish as threatened and designating eight stream miles and 1,617 acres of spring pool and spring-influenced wetlands as critical habitat, 77 Fed. Reg. 60,180 (Oct. 2, 2012). Then, on October 2, 2013, the Service listed the spring pygmy sunfish as a "threatened" species under the Act;

however, it did not designate critical habitat. 78 Fed. Reg. 60,766, 60,667 (Oct. 2, 2013). To

date, the Service has not designated critical habitat for the spring pygmy sunfish.

6.      Having proposed critical habitat on October 2, 2012, and having listed the spring

pygmy sunfish on October 2, 3013, the Service was statutorily required to designate critical

habitat on or before October 2, 2013; yet, the Service did not designate critical habitat at that

time and still has not done so. Consequently, the Service is in violation of the Endangered

Species Act.

7.      Thus, to ensure that the Endangered Species Act can provide lifesaving

protections for the spring pygmy sunfish, the Center brings this action for declaratory relief

against Ryan Zinke, in his official capacity as Secretary of the Interior; United States Department

of the Interior; Jim Kurth, in his official capacity as Deputy Director for Operations and Acting

Director of the United States Fish and Wildlife Service; and the United States Fish and Wildlife

Service to affirm that Defendants are in violation of the Endangered Species Act and

Administrative Procedure Act (APA) for failing to timely designate critical habitat for the spring

pygmy sunfish. The Center also respectfully requests that this Court compel the Service to issue

its final rule designating critical habitat to safeguard the freshwater springs and spring-fed

wetlands the sunfish needs to survive in the wild.

## JURISDICTION AND VENUE

8.      Plaintiff brings this action under the Endangered Species Act, 16 U.S.C. §§ 1533,

1540(g), and the APA, 5 U.S.C. § 706.

9.      The Court has jurisdiction over this action under 28 U.S.C. § 1331 (federal

question jurisdiction), 28 U.S.C. § 1346 (United States as a defendant), 16 U.S.C. § 1540(c)

(actions arising under the Endangered Species Act), and 16 U.S.C. § 1540(g) (citizen suit

provision of the Endangered Species Act), and 5 U.S.C. § 702 (Administrative Procedure Act).

10. The relief sought is authorized under 28 U.S.C. § 2201 (declaratory relief), 28

U.S.C. § 2202 (injunctive relief), 16 U.S.C. § 1540(g), and 5 U.S.C. § 702.

11. Plaintiff provided formal notice to Defendants of its intent to file suit under the

Endangered Species Act on April 9, 2018, more than 60 days prior to filing this complaint,

consistent with the Act's statutory requirements. 16 U.S.C. § 1540(g)(2). Because Defendants

have not remedied the legal violations outlined in the notice, there exists an actual, justiciable

controversy between the parties within the meaning of the Declaratory Judgment Act. 28 U.S.C.

§ 2201.

12. Venue in this Court is proper in the United States District Court for the District of

Columbia according to 28 U.S.C. § 1391(e) and 16 U.S.C. § 1540(g)(3)(A) because at least one

of the Defendants resides in this judicial district.

## PARTIES

13. Plaintiff Center for Biological Diversity is a national, nonprofit conservation

organization incorporated in California and headquartered in Tucson, Arizona, with offices

throughout the United States, including Alaska, Arizona, California, Colorado, Florida, Hawai'i,

Idaho, Minnesota, Nevada, New Mexico, New York, North Carolina, Oregon, Washington, and

Washington, D.C., and in Mexico. The Center works through science, law, and policy to secure a

future for all species, great and small, hovering on the brink of extinction. The Center has more

than 63,000 active members across the country. The Center and its members are concerned with

the conservation of imperiled species, including the spring pygmy sunfish, through effective

implementation of the Endangered Species Act. The Center brings this action on behalf of itself and its members.

14.     The Center's members include individuals with recreational, scientific, professional, aesthetic, spiritual, and ethical interests in the spring pygmy sunfish and its habitat. They have visited areas vital to the survival of the spring pygmy sunfish to observe the fish and enjoy the beauty of its spring-fed habitat, and they have concrete plans to do so again. For instance, one member has studied and searched for the spring pygmy sunfish and regularly returns to the habitat for recreational enjoyment and to observe wildlife. This member also intends to again search for the spring pygmy sunfish when opportunities to survey arise. She takes great joy in knowing the spring pygmy sunfish still survives in the Beaverdam Spring watershed and that she might one day have the opportunity to see one.

15.     Defendants' failure to comply with the Endangered Species Act's nondiscretionary deadline to designate critical habitat for the spring pygmy sunfish denies the sunfish vital protections that are necessary for its survival and recovery. Plaintiff's members are injured by Defendants' failure to timely designate critical habitat, which delays significant protections for the spring pygmy sunfish and harms its survival and recovery. For example, while the Service continues to delay designating critical habitat, imminent development plans threaten to destroy or degrade it before it can receive protections, thus harming the sunfish's chances to survive and recover. Until the Service protects the spring pygmy sunfish's critical habitat under the Act, the Center's and its members' interests in the spring pygmy sunfish are injured. These injuries are actual, concrete injuries presently suffered by Plaintiff's members; are directly caused by Defendants' inaction; and will continue to occur unless this Court grants relief.

16.     The relief sought herein—an order compelling the Service to designate critical habitat—would redress these injuries by protecting the spring pygmy sunfish's habitat before it can be further degraded or destroyed, thereby protecting the sunfish itself from extinction so Plaintiff and its members can continue to pursue their educational, scientific, recreational, aesthetic, and spiritual interests in the fish and its unique habitat. Plaintiff and its members have no other adequate remedy at law.

17.     Defendant Ryan Zinke is the Secretary of the United States Department of the Interior. As Secretary of the Interior, he has the ultimate responsibility to administer and implement the provisions of the Endangered Species Act for the spring pygmy sunfish, including timely designation of critical habitat, and to comply with all other federal laws applicable to the Department of the Interior. Plaintiff sues Defendant Zinke in his official capacity.

18.     Defendant United States Department of the Interior is an agency of the United States charged with administering the Endangered Species Act for most terrestrial and non-marine species like the spring pygmy sunfish.

19.     Defendant Jim Kurth is the Deputy Director for Operations and Acting Director of the United States Fish and Wildlife Service. As Acting Director, Defendant Kurth is a federal official with responsibility for implementing and enforcing the Endangered Species Act and its joint regulations, including timely designation of critical habitat, and for complying with all other federal laws applicable to the Service. Plaintiff sues Defendant Kurth in his official capacity.

20.     Defendant United States Fish and Wildlife Service is a federal agency within the Department of the Interior. The Secretary of the Interior has delegated his authority to administer the Endangered Species Act for terrestrial and non-marine wildlife to the Service. 50 C.F.R.

§ 402.01(b). This authority encompasses timely compliance with the Endangered Species Act's

mandatory deadlines to designate critical habitat

21.     Defendants United States Department of the Interior; United States Fish and

Wildlife Service; Ryan Zinke, in his official capacity as Secretary of the United States

Department of the Interior; and Jim Kurth, in his official capacity as Deputy Director of

Operations and Acting Director of the Service, have waived sovereign immunity in this action

pursuant to 16 U.S.C. § 1540(g) (Endangered Species Act) and 5 U.S.C. § 702 (APA).

## STATUTORY AND REGULATORY FRAMEWORK

22.     The Endangered Species Act "represent[s] the most comprehensive legislation for

the preservation of endangered species ever enacted by any nation." *Tenn. Valley Auth. v. Hill*,

437 U.S. 153, 180 (1978). Indeed, "Congress intended endangered species be afforded the

highest of priorities." *Id.* at 174. Accordingly, the Act's purpose is to "provide a program for the

conservation of . . . endangered species and threatened species" and "to provide a means

whereby the ecosystems upon which endangered . . . and threatened species depend may be

conserved." 16 U.S.C. § 1531(b).

23.     To that end, the Endangered Species Act requires the Service to protect imperiled

species by listing them as "endangered" or "threatened." *Id.* § 1533(a)(1). A species is

endangered if it "is in danger of extinction throughout all or a significant portion of its range."

*Id.* § 1532(6). A species is threatened if it is "is likely to become an endangered species within

the foreseeable future throughout all or a significant portion of its range." *Id.* § 1532(20).

24.     Once a species is listed, it receives a host of important protections designed to

prevent its extinction and aid its recovery, including one of the most crucial protections—

safeguards for its "critical habitat." *Id.* § 1533(a)(3)(A).

25.     Critical habitat includes specific areas occupied by the threatened or endangered species with "physical or biological features . . . essential to the conservation of the species and . . . which may require special management considerations or protection," as well as specific areas unoccupied by the species that "are essential for the conservation of the species." *Id.* § 1532(5)(A). "Conservation" of a species means "the use of all methods and procedures which are necessary to bring any endangered species or threatened species to the point at which the measures provided pursuant to [the Act] are no longer necessary." *Id.* § 1532(3). Accordingly, critical habitat includes areas that require proper management to ensure a listed species cannot only survive but also recover.

26.     Protecting a species' critical habitat is crucial for the protection and recovery of many listed species, particularly those that have become endangered or threatened because of historical and ongoing habitat loss or degradation. For example, Section 7 of the Endangered Species Act requires all federal agencies to ensure their actions do not "jeopardize the continued existence" of any listed species or "result in the destruction or adverse modification" of their remaining "critical habitat." *Id.* § 1536(a)(2).

27.     To ensure species at risk of extinction receive these essential habitat protections in a timely manner, Congress prioritized designating critical habitat. *Id.* § 1533(a)(3), (b)(6); *see also id.* § 1531(b) (statutory directive to "provide a means whereby the ecosystems upon which endangered . . . and threatened species depend may be conserved").  The Service is required, "to the maximum extent prudent and determinable," to designate critical habitat for a species "concurrently with making a determination" that it is endangered or threatened," *id.* § 1533(a)(3)(A), (b)(6)(C), and within one year of issuing a rule proposing critical habitat, *id.* § 1533(b)(6)(A)(ii).

28.     If critical habitat is "not . . . determinable" at this mandatory decision point, the

Service may extend the deadline to designate critical habitat by "no more than one additional

year," at which point it must publish a final regulation "based on such data as may be available at

the time." *Id.* § 1533(b)(6)(C)(ii). Designation of critical habitat is not determinable when "[d]ata

sufficient to perform required analyses are lacking; or . . . [t]he biological needs of the species

are not sufficiently well known to identify any area that meets the definition of 'critical habitat.'"

50 C.F.R. § 424.12(a)(2).

29.     Designating critical habitat is "not prudent" when: (1) the species is threatened by

taking or other human activity, such as commercial collecting, and identifying critical habitat

would increase the degree of that threat; or (2) "designation of critical habitat would not be

beneficial to the species" because, for instance, habitat destruction is not a threat to the species.

*Id.* § 424.12(a)(1).

30.     The Service must make critical habitat designations based on "the best scientific

data available." 16 U.S.C. § 1533(b)(2).

31.     If the Service finds it is not prudent to designate critical habitat or that critical

habitat is not determinable, it must "state the reasons for not designating critical habitat in the

publication of proposed and final rules listing a species." 50 C.F.R. § 424.12(a).

32.     The Endangered Species Act does not safeguard a species' critical habitat until

the Service designates it. Accordingly, it is essential that the Service meticulously follow the

Act's procedures and deadlines to ensure it designates critical habitat in a timely manner.

## FACTS GIVING RISE TO PLAINTIFF'S CLAIM FOR RELIEF

33.     The spring pygmy sunfish, pictured below, is a tiny, striped fish that rarely grows

longer than an inch. It is native to spring ecosystems in the Tennessee River Drainage in northern

Alabama. Male sunfish are known for their complex, courtship rituals, which involve fin undulations, vertical bobbing, weaving, and "dashing."



34.     The spring pygmy sunfish is entirely groundwater dependent, living in the dense, filamentous, underwater plants around moderately flowing springs. It uses submerged vegetation to hide from predators, hunt small invertebrates, and find mates. The spring pygmy sunfish is most abundant at spring outflows and pools, thriving in relatively clear, unpolluted, nutrient poor water; however, it can also live in spring runs and spring-fed wetlands. During breeding season, the sunfish requires a relatively neutral pH level of 6.0 to 7.7 and water temperatures of 77.2 to 68 degrees Fahrenheit to successfully reproduce. Thus, a steady, clean spring flow ensures a stable environment for the spring pygmy sunfish to survive, even in dry seasons.

35.     The sunfish lives in unique metapopulations, groups of several populations that have limited connectedness and gene-flow, which make migration and continuity important to maintain the species' genetic diversity. The loss of many subpopulations can lead to low genetic diversity, and eventually extinction.

36.     Since its discovery in 1937, the spring pygmy sunfish has teetered on the brink of extinction. Scientists have twice presumed it was extinct.

37.     Historic development and agricultural practices have degraded and destroyed the sunfish's spring habitat, confining it to a restricted range. Once known from at least three spring sites—Cave Springs, Pryor Spring, and the Beaverdam Creek and Spring—the spring pygmy sunfish now occupies about 5.9 miles and 1,435 acres in the Beaverdam Creek and Spring watershed. River damming and water contamination extirpated the Cave Springs and Pryor Springs populations. Attempts to reintroduce the spring pygmy sunfish to the impaired waters of Pryor Springs have failed.

38.     Habitat destruction and degradation are the most significant threats to the spring pygmy sunfish's existence. Historic and present-day tree removal, cattle grazing, pollution, and intensive water consumption associated with large-scale agricultural operations have contributed to the degradation of habitat and eventual demise of sunfish populations.

39.     Continuing urban development in the Beaverdam Spring and Creek complex has also proven detrimental to the sunfish, impairing water quality and quantity. Impermeable roofs, pavement, and road surfaces prevent rainwater from recharging the aquifer-fed springs and increase storm water runoff into surface waters, ripping up native vegetation and introducing pollutants. Development also alters natural water temperatures, reduces dissolved oxygen the sunfish needs to breathe, and creates sediment that clouds water, slows flows, and chokes out the native vegetation the sunfish lives in.

40.     Pumping and diverting water to support residential and commercial developments, industrial activities, and agricultural operations also degrade the spring pygmy sunfish's habitat by reducing spring outflow and disrupting natural water levels and

temperatures. Without stable, natural spring flows, the spring pygmy sunfish's habitat dries out or becomes fragmented, splintering interbreeding sunfish populations and hindering natural gene flow. Reduced water flow also concentrates pollutants and makes the sunfish more vulnerable to predators.

41.     Urbanization, industrialization, and agriculture also contaminate groundwater and surface waters through fertilizers, pesticides, and other contaminants, threatening the remaining populations of spring pygmy sunfish. While some of these contaminants are directly lethal to the sunfish, others incrementally degrade habitat by killing native aquatic plants and reducing dissolved oxygen levels.

42.     As development expands into the watershed of the spring pygmy sunfish's last remaining springs, the same habitat destruction that led to the sunfish's threatened status will intensify, putting the remaining populations at risk of extinction.

43.     Due to the spring pygmy sunfish's precipitous decline and the looming threat of encroaching development from the City of Huntsville, on November 24, 2009, the Center submitted a petition, substantiated by the best scientific studies available, asking the Service to list the spring pygmy sunfish as endangered and designate critical habitat under the Endangered Species Act.

44.     On April 1, 2011, more than a year overdue, the Service found that listing the sunfish "may be warranted." 76 Fed. Reg. 18,138, 18,139 (Apr. 1, 2011). Another year and a half later, and almost two years overdue, on October 2, 2012, the Service proposed to list the spring pygmy sunfish as threatened and designate eight stream miles and 1,617 acres of spring pool and spring-influenced wetland as critical habitat, 77 Fed. Reg. 60,180 (Oct. 2, 2012).

45.     On April 29, 2013, the Service re-opened public comment period for the proposed listing and designation of critical habitat for the spring pygmy sunfish, proposing a "slight reduction" to the size of the proposed critical habitat and announcing the availability of a draft economic analysis. 78 Fed. Reg. 25,033, 25, 034 (Apr. 29, 2013).

46.     On October 2, 3013, the Service listed the spring pygmy sunfish as threatened; however, it did not designate critical habitat for the sunfish, stating it would do so "[i]n a separate, future rulemaking" to be published "in the near future." 78 Fed. Reg. 60,766, 60,667, 60,669 (Oct. 2, 2013).

47.     On February 5, 2014, the Service again reopened public comment on its October 2, 2012 proposal to designate critical habitat for the spring pygmy sunfish, stating its intent to exclude from the final critical habitat designation lands covered by three candidate conservation agreements with assurances. 79 Fed. Reg. 6,871, 6,871 (Feb. 5, 2014).

48.     The Service made no findings in either the proposed or final listing rules that designating critical habitat was "not prudent" or "not determinable." Indeed, the Service determined areas suitable for critical habitat and proposed them.

49.     The Service was required to designate critical habitat concurrently with its final decision to list the spring pygmy sunfish on October 2, 2013, and no more than a year after proposing critical habitat on October 2, 2012. Yet more than four years later, following a pattern of missed statutory deadlines, the Service has not made this mandatory finding, in violation of the Endangered Species Act. 16 U.S.C. § 1533(b)(3)(B).

## PLAINTIFF'S CLAIM FOR RELIEF

<u>Violation of the Endangered Species Act, 16 U.S.C. § 1533(b)(3)(B)</u>
<u>Failure to Designate Critical Habitat for the Spring Pygmy Sunfish</u>

50.      The Center re-alleges and incorporates by reference all the allegations set forth in

this Complaint as though fully set forth below.

51.      The Endangered Species Act required Defendants to designate critical habitat for

the spring pygmy sunfish concurrently with its decision to list it as threatened, 16 U.S.C.

§ 1533(a)(3)(A)(i), (b)(6)(C), and within one year of proposing critical habitat, *id.* § (b)(6)(A)(ii),

unless critical habitat was not prudent or determinable. Defendants determined areas of critical

habitat and prudently proposed to designate and protect them from further destruction and

degradation. However, Defendants never actually designated critical habitat and thus are in

violation of the Act's express statutory command to timely designate critical habitat.

52.      The Center and its members are injured by the Service's failure to designate

critical habitat, violating Congress's mandate in the Endangered Species Act that the Service

designate critical habitat concurrently with listing a species and no more than one year after

proposing critical habitat.

53.      The APA states that the reviewing court "shall" interpret statutes and "compel

agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

54.      The Service's failure to designate critical habitat for the spring pygmy sunfish

violates the Endangered Species Act, 16 U.S.C. § 1533(a)(3)(A), (b)(6)(A), (C), and its

implementing regulations, and constitutes agency action "unlawfully withheld or unreasonably

delayed" within the meaning of the APA, 5 U.S.C. § 706(1).

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff prays that this Court enter a Judgment for Plaintiff providing the following relief:

(1)     Declare that Defendants violated the Endangered Species Act and APA by failing designate critical habitat for the spring pygmy sunfish;

(2)     Order Defendants to designate, by date certain, final critical habitat under the Endangered Species Act, 16 U.S.C. § 1533(a)(3)(A);

(3)     Grant Plaintiff its reasonable attorneys' fees and costs in this action, as provided by the Endangered Species Act, 16 U.S.C. § 1540(g)(4), or the Equal Access to Justice Act, 28 U.S.C. § 2412; and

(4)     Provide such other relief as the Court deems just and proper.

DATED: June 11, 2018                    Respectfully submitted,


_/s/ Elise Pautler Bennett_
Elise Pautler Bennett
D.C. Bar No. FL0018
Center for Biological Diversity
P.O. Box 2155
St. Petersburg, FL 33731
Tel: (727) 755-6950
Fax: (520) 623-9797
ebennett@biologicaldiversity.org

_/s/ Amy R. Atwood_
Amy R. Atwood
D.C. Bar No. 470258
Center for Biological Diversity
P.O. Box 11374
Portland, OR 97211-0374
Tel: (971) 717-6401
Fax: (503) 283-5528
atwood@biologicaldiversity.org

_Attorneys for Plaintiff_