.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, | ) | Case No: 1:18-cv-01375-RDM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BERNHARDT, et al, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ __ | ) | |

<u>PLAINTIFF'S [CORRECTED] COMBINED MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION FOR A STAY OF PROCEEDINGS AND IN SUPPORT OF
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, AND FOR DECLARATORY AND
INJUNCTIVE RELIEF</u>

DATED: March 12, 2019                    Respectfully submitted,


*/s/ Amy R. Atwood*
Amy R. Atwood, D.C. Bar No. 470258
atwood@biologicaldiversity.org
Tel: (971) 717-6401
CENTER FOR BIOLOGICAL DIVERSITY
P.O. Box 11374
Portland, OR 97211-0374
Fax: (503) 283-5528

*Attorney for Plaintiff*

## TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................... 1

II.   STATEMENT OF FACTS ............................................................................. 1

III.  LEGAL BACKGROUND .............................................................................. 3

IV.   STANDARD OF REVIEW ........................................................................... 5

V.    ARGUMENT ................................................................................................. 6

      A.    The Center Has Standing     7
      B.    Defendants Have Failed to Publish Their Final Rule Designating Critical Habitat
            for the Spring Pygmy Sunfish, and Hence Are in Violation of Section 4(b) of the
            ESA, And Hence the Court Should Grant Summary Judgment and Declaratory
            and Injunctive Relief to the Plaintiff  7

VI.   CONCLUSION ............................................................................................. 10

## TABLE OF AUTHORITIES

5 U.S.C. § 553 ...................................................................................................... 13-14, 15

5 U.S.C. § 706 ...................................................................................................... 10, 11, 13

16 U.S.C. § 1531 ................................................................................................... 9, 14-15

16 U.S.C. § 1532 ................................................................................................................ 9

16 U.S.C. § 1533 ......................................................................................................... passim

16 U.S.C. § 1540 .............................................................................................................. 13

28 U.S.C. § 2201 .............................................................................................................. 13

28 U.S.C. § 2202 .............................................................................................................. 13

50 C.F.R. Part 424 ....................................................................................................... 9, 10, 13

Fed. R. Civ. P. 1 .............................................................................................................. 10

Fed. R. Civ. P. 56 ....................................................................................................... 10, 13

Fed. R. Civ. P. 57 ............................................................................................................ 13

*Biodiversity Legal Found. v. Badgley*,
    309 F.3d 1046 (9th Cir. 2002) ............................................................................ 11, 12

*Anderson v. Liberty Lobby*,
    477 U.S. 242 (1986) ....................................................................................................... 10

*Celotex Corp. v. Catrett*,
    477 U.S. 317, 322, n.3 (1986) .................................................................................... 10

*Ctr. for Biological Diversity et al v. Kempthorne et al*,
    No. C 08-1339 CW, slip op. (N.D. Cal. Apr. 28, 2008) ........................................ 14

*Tenn. Valley Auth. v. Hill*,
    437 U.S. 153 (1978) ................................................................................................ 8, 14

## I.    INTRODUCTION

The "Motion to Extend the Stay in Proceedings" filed by Defendants on February 22, 2019, ECF No. 12 ("Df. Motion"), would only result in more delay of these proceedings, ECF Nos. 7, 8, and 9—this time, until May 24, 2019—in return for no clear benefit or an efficient use of judicial economy.  ECF No. 12 (Df. Motion) at 3.  While Defendants claim that they intend to submit a final rule designating critical habitat for the threatened Spring Pygmy Sunfish (*Elassoma alabamae*) ("Sunfish") to the Office of Federal Register ("OFC") by late May 2019 (hereinafter "the Final Rule"), they stop noticeably short of binding themselves to any deadline.[1] Nevertheless, Defendants' request for more delay is, for all practical purposes, an accession as to their liability for violations of the nondiscretionary duties and timelines in section 4(b) of the ESA, 16 U.S.C. § 1533(b), as alleged in Plaintiff's Complaint and Claim for Relief pursuant to the citizen suit provision of the ESA.  ECF No. 1 (Complaint) at ¶¶ 50-54.  Accordingly, Plaintiff moves for summary judgment, and requests declaratory judgment and an injunction ordering Defendants to submit the Final Rule to the OFR no later than May 31, 2019.  ECF No. 15-10 (Proposed Order).  Granting this relief will not only hold Defendants to their own deadline, but will conserve the Court's the Parties' time and resources by mooting Defendants' request for more delay.

## II.    STATEMENT OF FACTS

At one-two inches long, a casual observer may not easily see the brilliant turquoise colors of the Spring Pygmy Sunfish, a diminutive species of sunfish pictured below:

---

[1]  Plaintiff is the Center for Biological Diversity ("the Center"), ECF No. 1 (Complaint) ¶¶ 13-16, a national, non-profit environmental organization that formally petitioned FWS to classify the Sunfish as a threatened species and to finalize the species' "critical habitat" under section 4(b) of the ESA, 16 U.S.C. § 1533(b), in 2009.  ECF No. 15-2 (Plaintiff's Statement of Facts ("Pl. SOF"); ECF No. 15-4 (Declaration of D. Noah Greenwald, M.S.).



With a very restricted distribution and dependence on the exceedingly clean waters of a small number of natural springs, this Sunfish was first proposed for protection under the Endangered Species Act with designated critical habitat in 1977, but this proposal was not finalized within Congressionally imposed timelines and withdrawn by FWS in 1980.  ECF 15-2 (Pl. SOF).

More than 30 years after the Sunfish was first proposed for protection, Center staff worked with Dr. Michael Sandel, the leading scientific expert on the Sunfish, to draft a formal petition to list the species under the Endangered Species Act, which was submitted to the U.S. Fish and Wildlife Service ("FWS") in November 2009.  *Id*. (Pl. SOF) ¶ 4, 9.  The Petition documented the Sunfish had been reduced to a single population in just five miles of the Beaverdam Spring Complex, Limestone County, Alabama, and under imminent by industrial development being backed by the City of Huntsville and the Tennessee Valley Authority through their certification of large areas of former agricultural land directly adjacent to the springs as a "Megasite," i.e., areas where industrial development project would be fast-tracked.  *Id*. ¶ 10.

About 18 months after Plaintiff submitted the Petition, FWS issued an initial finding that listing of the sunfish may be warranted. *Id.* ¶ 12. In accordance with a multi-species settlement agreement with the Center, FWS issued a proposed rule on October 2, 2012 listing the Sunfish as a threatened species and proposing designation of critical habitat, including Beaverdam Spring. *Id.* FWS finalized listing of the Spring Pygmy Sunfish on October 2, 2013, nearly four years after the Center's Petition and two years beyond the Endangered Species Act statutory deadlines. *Id.* Despite the passage of more than six years, FWS has yet to finalize designation of critical habitat. *Id.*

Since FWS finalized protection of the Sunfish as a "threatened" species in 2013, threats to the Sunfish's existence have not declined or abated, as FWS's declarant Gary Frazer suggests. ECF No. 12-2 (Frazer Decl.) ¶ 35. To the contrary, over the past few years, what were once nearby and even adjacent agricultural lands have been sold and slated for "Megasite" industrial development by the Tennessee Valley Authority ("TVA") and the City of Huntsville. *Id.* While FWS fails to meet its deadlines, these lands are being actively converted from cropland to industrial and commercial developments, including a Toyota-Mazda automobile-manufacturing plant on a parcel adjacent to the Beaverdam Complex. *Id.*; ECF No. 15-2 (Pl. SOF) ¶ 18.

III.    LEGAL BACKGROUND

Enacted in 1973, the Endangered Species Act remains "the most comprehensive legislation for the preservation of endangered species ever enacted by any nation." *Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 180 (1978) ("*TVA v. Hill*"). The Act's purpose is to provide "a program for the conservation of . . . endangered species and threatened species" and "a means whereby the ecosystems upon which endangered . . . and threatened species depend may be conserved." 16 U.S.C. § 1531(b).

To that end, the Act requires FWS list species that are threatened with extinction as "endangered" or "threatened." *Id.* § 1533(a)(1). A species is "endangered" if it "is in danger of extinction throughout all or a significant portion of its range." *Id.* § 1532(6). A "threatened" species is one that "is likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range." *Id.* § 1532(20). Once a species is listed by FWS, it is entitled to an array of substantive protections that work to prevent its extinction and aid its recovery, including the designation and protection of the species' "critical habitat." *Id.* § 1533(a)(3)(A); ECF No. 1 (Complaint) (outlining the ESA substantive legal protections for endangered and threatened species).

The ESA includes a formal way to petition FWS to making determinations as to petitioned actions are warranted, such as classifying species as endangered or threatened, and to designate their critical habitat, in accordance with the criteria and timelines found in section 4(b). 16 U.S.C. § 1533(b); 50 C.F.R. Part 424. Within 90 days of FWS's receipt of a petition to list a species and/or to designate its critical habitat, the agency must "make a finding," known as a "90-day finding," as to whether the petitioned action "may be warranted." 16 U.S.C. § 1533(b)(3)(A). If FWS finds that the petitioned action may be warranted, then the agency must "promptly commence a review of the status of the species," *id.*, and within 12 months after receiving the petition, decide whether listing the species is: 1) "warranted"; 2) "not warranted"; or 3) "warranted but precluded" by listing determinations that are a higher priority, so long as FWS demonstrates that it is making "expeditious progress" in making overdue petition findings and reducing the backlog of overdue listing determinations. *Id.* § 1533(b)(3)(B).

FWS shall designate critical habitat concurrently with its final listing rule, "to the maximum extent . . . determinable," in which case FWS may extend the period to designate

4

critical habitat by one year. *Id*. § 1533(a)(3)(A)(i), (b)(6)(C); 50 C.F.R. §§ 424.12(a)-424.17(b).

Once FWS publishes in the proposed rule designating critical habitat, it has one year: 1) to

publish "a final regulation to implement such designation"; or 2) if critical habitat is not

determinable, to publish notice that it is extending the one-year period by no more than one

additional year.  16 U.S.C. § 1533(b)(6)(A)(ii); 50 C.F.R. § 424.17(a).  If FWS finds that critical

habitat "not determinable," it must publish a final regulation designating critical habitat "based

on such data as may be available at that time" within one year.  16 U.S.C. § 1533(b)(6)(C)(ii).

IV.    STANDARD OF REVIEW

        A court shall render summary judgment if no genuine issue as to any material fact exists

and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) .  When the

evidence is "so one-sided that one party must prevail as a matter of law," summary judgment is

appropriate.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52 (1986) .  Where the moving party

has demonstrated that there is no material issue of fact for trial, the "adverse party may not rest

upon the mere allegations or denials of the adverse party's pleadings, but … must set forth

specific facts showing that there is a genuine issue for trial."  *Celotex Corp. v. Catrett*, 477 U.S.

317, 322, n.3 (1986) (internal quotation omitted).  Summary judgment is not treated as "a

disfavored procedural shortcut" but as "an integral part of the Federal Rules as a whole, which

are designed 'to secure the just, speedy and inexpensive determination of every action and

proceeding.'"  *Id*. at 327 (quoting Fed. R. Civ. P. 1).

        The standard of review is supplied by the Administrative Procedure Act, 5 U.S.C. § 706

("APA").  *Nat'l Ass'n of Home Builders v. Norton*, 415 F.3d 8, 13 (D.C. Cir. 2005).  Under the

APA, the reviewing court is directed to "compel agency action unlawfully withheld or

unreasonably delayed."  5 U.S.C. § 706(1) .  Yet, where, as here, "Congress by organic statute

sets a specific deadline for agency action, neither the agency nor any court has discretion.  The

agency must act by the deadline.  If it withholds such timely action, a reviewing court must

compel the action unlawfully withheld."  *Forest Guardians v. Babbitt*, 174 F.3d 1178, 1190

(10th Cir. 1999); *see also Biodiversity Legal Found. v. Badgley*, 309 F.3d 1046, 1057 (9th Cir.

2002) ("[FWS's] failure to complete the listing determinations within the mandated time frame

compelled the court to grant injunctive relief.  The court had no discretion to consider [FWS's]

stated priorities."); ECF No. 15-8 (Pl. Exh. D) (Transcript of Status Hearing Before the

Honorable Emmet G. Sullivan at 17, *Ctr. for Biological Diversity v. Salazar et al*, Civ. Nos. 12-

861, 12-1073, 12-1091 (DDC) (Sept. 25, 2012) ("Hearing Transcript") (granting summary

judgment to Plaintiff in three consolidated ESA citizen suits, declaring that FWS had "failed to

make . . . required . . . listing determinations" for the species, and ordering the parties to

negotiate and "to determine dates for the[] . . . overdue determinations").

V.      ARGUMENT

There can be no genuine dispute as to any of the facts that are material to Plaintiffs'

Claim for Relief.  Almost 10 years have passed since the Center petitioned FWS to list the

Sunfish and to designate critical habitat, and it has been more than six years since the mandatory

deadline for Defendants to publish the Final Rule has passed.  FWS developed a proposed rule

for critical habitat, has since revised that proposal twice, and has no legal basis for any further

delay of the Final Rule.  Accordingly, the Court bring this proceeding to an efficient and timely

resolution by granting summary judgment to the Center on the merits of its Claim for Relief

under the ESA's citizen suit provision, entering declaratory judgment finding that Defendants

have failed to make the required critical habitat determination for the Sunfish, and ordering

Defendants to submit the Final Rule to the Office of Federal Register on or before Friday, May

31, 2019.  ECF No. 15-8 (Pl. Exh. D) (Hearing Transcript) at 17.

    A.  <u>The Center Has Standing.</u>

The Center is a leading national non-profit conservation organization dedicated to slowing and reversing the Earth's sixth mass extinction event, which is primarily attributable to man's activities.  ECF 15-4 (Greenwald Decl.) ¶ 2.[2]  Incorporated in California and headquartered in Tucson, Arizona, the Center maintains offices throughout the United States and Mexico.  *Id*.  The Center and its members are concerned with the conservation of imperiled species, including the Sunfish, and with effective implementation of Act.  *Id*.  The Center brings this action on behalf of itself and members, who include individuals with recreational, scientific, professional, aesthetic, spiritual, and ethical interests in the spring pygmy sunfish and its habitat.  *Id*.

The relief Plaintiffs seeks—an Order compelling FWS to designate critical habitat no later than May 31, 2019, the deadline that FWS most recently set for itself to submit its Final Rule to OFC, ECF No. 12 at 3—would redress these injuries by helping to protect the Sunfish's critical habitat from further destruction or adverse modification without the appropriate conservation measures.  Such relief will help to slow the Sunfish's decline and perhaps avert or reduce future injury to the educational, scientific, recreational, aesthetic, and spiritual interests of the Center and its members in in the Sunfish.  ECF No. 15-5 (Greenwald Decl.) ¶¶ 10-15.

    B.  <u>Defendants Have Failed to Publish Their Final Rule Designating Critical Habitat for the Spring Pygmy Sunfish and Are in Violation of Section 4(b) of the ESA, Hence the Court Should Grant Summary Judgment and Declaratory and Injunctive Relief to the Plaintiff.</u>

FWS request for an extension is, in effect, an admission that it is in violation of the ESA.  Again, FWS is over six and a half years late in meeting its nondiscretionary deadline to issue a

---

[2]  The Center's mission is to work through science, law, and policy to secure a future for all species, great and small, hovering on the brink of extinction.  *Id*.

final rule designating critical habitat for the Sunfish.  FWS failed to designate critical habitat for the Sunfish "concurrently" with its October 2, 2013 Listing Rule.  16 U.S.C. § 1533(a)(3)(A)(i).  In addition, FWS did not publish a final rule designating critical habitat within a year of publishing the proposed rule on October 2, 2012.  FWS has lawful basis for further delay.  Defendants are in violation of the ESA.  16 U.S.C. § 1533(b)(6)(A)(ii); 50 C.F.R. § 424.17(a).

Liability for violations of the nondiscretionary deadlines in section 4 of the ESA is usually resolved based on motions for summary judgment.  ECF No. 15-7 (Pl. Exh. C); ECF No. 15-8 (Pl. Exh. D).[3]  Accordingly, the Center respectfully moves the Court to grant its Motion pursuant to Fed. R. Civ. P. 56, and to enter declaratory judgment that Defendants have violated the ESA as alleged in Plaintiff's Complaint.  ECF No. 1; Fed. R. Civ. P. 57; 28 U.S.C. § 2201.

Additionally, Plaintiffs request injunctive relief directing FWS to submit the Final Rule to OFC no later than the agency's own internal deadline of May 31, 2019.  ECF No. 13; ECF No. 12 at 1. 16 U.S.C. § 1540(g)(1)(A) (injunctive relief under the ESA); 28 U.S.C. § 2202 (injunctive relief).  Plaintiff's requested relief will bring Defendants' ongoing ESA violations to an end and result in the submission of the Final Rule to the Federal Register by Friday, May 31, 2019.  ECF No. 15-10 (Proposed Order); 5 U.S.C. § 553(d); 16 U.S.C. § 1533.  The requested deadline will not cause any hardship to Defendants, as it is coextensive with Defendants' current timeline for submission of the Final Rule to the Federal Register, which has been ready for submission and publication for months.  ECF No. 12-2 (Frazer Dec.) ¶¶ 46.  Defendants notably

---

[3] Judicial review of such motions is also typically based on an "administrative record."  5 U.S.C. § 706(2)(A).  But in this matter, all material facts are publicly available—e.g., in listing rules, agency records obtained by the Center through requests under the Freedom of Information Act, and declarations—and given Defendants' clear liability for ESA violations, the scope of these proceedings is now centered on the appropriate form of relief.  Under the circumstances, there is no need to await such time when Defendants might prepare an administrative record in order to rule on and to grant Plaintiff's requested relief.

do not claim that FWS's latest timeline will, in fact, be met, and or otherwise bind themselves to

FWS's internal timeline of "late May 2019." ECF No. 12 at 1.[4] Defendants also do not fully

explain for otherwise account for their repeated delays. Hence, Defendants effectively concede

that without an enforceable deadline, the Final Rule may never see the regulatory light of day.

ECF No. 15-7 (Pl. Exh. C) (*Ctr. for Biological Diversity et al v. Kempthorne et al*, No. C 08-

1339 CW, slip op. (N.D. Cal. Apr. 28, 2008)) (granting summary judgment to the Center and

ordering Defendants to publish the final rule classifying the polar bear as a "threatened" species

under the ESA by a date certain).

By holding Defendants to their own deadline, such relief will also moot Defendant's

Motion for additional delay and sidestep the possibility for more delay to undermine the ESA's

fundamental conservation purpose for the Sunfish. *TVA v. Hill*, 437 U.S. at 174 (review of the

ESA's "language, history, and structure" led the Supreme Court to conclude "beyond a doubt"

that "Congress intended endangered species to be afforded the highest of priorities"); 16 U.S.C.

§ 1531(c)(1) ("It is further declared to be the policy of Congress that all Federal departments and

agencies shall seek to conserve endangered species and threatened species and shall utilize their

authorities in furtherance of the purposes of this Act.").

When it finally takes effect, the Final Rule will represent both the culmination of years of

scientific determinations interspersed with bureaucratic delays, and the start of an era of new

---

[4] By email dated March 6, 2019, the undersigned counsel for Plaintiff requested a status update from counsel for the Defendants. ECF No. 15-6 (Pl. Exh. B). Replying the following day, counsel for the Defendants stated that FWS has yet to submit the Final Rule for publication in the Federal Register, as it had planned, by the end of February 2019. ECF 12 at 3; Declaration of Gary Frazer, U.S. Fish and Wildlife Service ("Frazer Dec.") ¶ 46. Arrival at "Headquarters"— i.e., the Washington, D.C. headquarters of Defendant the U.S. Department of Interior—would then trigger a three-month "briefing and clearance process." ECF No. 12-2 (Frazer Decl.) ¶¶ 31, 46. Counsel for Defendants did state that submission to Headquarters is expected soon. *Id*.

substantive protections for this tiny emblem of Alabama's natural history.  The Sunfish will gain

new substantive protections that it will help the Sunfish slow, reverse, and recover from the

threat of extinction, which has only been exacerbated by a decade of delays.  ECF No. 15-10

("Proposed Order").  But this simply cannot occur until the Final Rule is submitted to OFC,

published in the Federal Register, 5 U.S.C. § 1533(d), and finally permitted to take effect, 5

U.S.C. § 553(d).

VI.     <u>CONCLUSION</u>

There is simply no guarantee that Defendants will satisfy their obligation to publish the

Final Rule by late May 2019, and there is no lawful reason for continued delay in publishing the

Rule.  For this and all the foregoing reasons, the Court should grant summary judgment to

Plaintiff, enter Declaratory Judgment for Plaintiff, and Order Defendants to publish the Final

Rule by May 31, 2019.  Should the Court decline to rule in favor of Plaintiff on this Motion,

Plaintiff respectfully requests that the Court rule without prejudice as to the Center's ability to

move for summary judgment, e.g., if the issues present themselves at a later time to be

appropriate for renewed summary judgment briefing.


DATED: March 12, 2019                      Respectfully submitted,


                                           */s/ Amy R. Atwood*
                                           Amy R. Atwood,  D.C. Bar No. 470258
                                           atwood@biologicaldiversity.org
                                           Tel: (971) 717-6401
                                           CENTER FOR BIOLOGICAL DIVERSITY
                                           P.O. Box 11374
                                           Portland, OR 97211-0374
                                           Fax: (503) 283-5528

                                           *Attorney for Plaintiff*